IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| LOUIS C. LUCK, | ) |
| | ) Case No. 4:06-CV-00007 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendant. | ) |

Before me is the *Report and Recommendation* of the United States Magistrate Judge. The Magistrate Judge recommends affirming the Commissioner's final decision, which denied the Plaintiff's claim for benefits. The Plaintiff has filed several objections to that Report. I have reviewed the Magistrate Judge's *Report and Recommendation*, the Plaintiff's objections, and relevant portions of the record. The matter is now ripe for decision.

For the reasons stated below, I will **adopt** the Magistrate Judge's *Report and Recommendation* and will **overrule** the Plaintiff's objections. The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed,** and judgment will be **granted** for the Commissioner. This case will be **dismissed** from the docket of this Court.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Plaintiff, Louis C. Luck (hereinafter "Luck"), was fifty-three years old when he applied for benefits on September 4, 2003. He earned a high school diploma in 1968, briefly served in the armed forces, and has worked as a service man at a Goodyear Tire & Rubber Company plant in Danville, Virginia. He claimed that he became disabled on December 5, 2002, shortly before he underwent total hip replacement surgery. The Administrative Law Judge

1

("ALJ") found that Luck was not disabled and therefore not entitled to a period of disability or disability insurance benefits.

The Appeals Council held that there was no basis in the record to review or change the ALJ's decision; accordingly it denied review and adopted the ALJ's decision as the final decision of the Commissioner. Luck appealed the decision to the District Court, and I referred the case to the Magistrate Judge. The Magistrate Judge recommended affirming the Commissioner's decision and dismissing this case from the docket of the court. Luck objected to the Magistrate Judge's recommendation.

## II.    STANDARD OF REVIEW

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also, Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner of Social Security is charged with evaluating the medical evidence, assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527-404, 1545 (2006). The regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R.

2

§§ 404.1527, 416.927. If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then this Court must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642.

## III.     DISCUSSION

In evaluating Luck's claims of disability, the ALJ properly used the five step analysis found in 20 C.F.R. §§ 404.1520(a), 416.920(a) (2006). Under that test, the ALJ first discerned whether Luck was engaged in substantial gainful activity. If so, he would not have qualified as disabled under the regulations. 20 C.F.R. §§ 404.1520(b), 416.920(b). Upon finding that he was not engaged in such activity, the ALJ then determined whether he suffered from a severe impairment. If not, then he could not have established a disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). After finding that Luck suffered from a severe impairment, the ALJ examined whether his impairment met or equaled a listed impairment in Appendix 1 of 20 C.F.R. 404, Subpart P. 20 C.F.R. §§ 404.1520(d), 416.920(d). In this case, none of Luck's impairments met or equaled a listed impairment. Therefore, the ALJ went on to determine Luck's residual functioning capacity and if based on that capacity, he could return to his prior work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The ALJ found that Luck did not retain the necessary capacity to return to his prior work. As a result, the ALJ proceeded to the fifth step in the analysis, whether Luck could have performed other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The ALJ determined that Luck could perform "a significant number of jobs in the national economy," such as a bench assembler. Thus, the ALJ concluded that Luck was not disabled.      First, Luck objects to the Magistrate Judge's finding that the ALJ properly gave reduced weight to the November 4, 2003 report from Dr. David E. Attarian ("Dr. Attarian"),

3

Luck's treating orthopedic surgeon. In that report, Dr. Attarian opined that in a given work day, provided he had breaks, Luck could sit for three hours, stand for one hour, and walk for one hour. He determined that Luck was limited to sedentary work. He further opined that Luck could not return to his previous job or any other work. Additionally, Dr. Attarian stated that the treatment was complete and that he did not expect Luck's condition to change.

The ALJ gave that report "reduced weight in establishing the claimant's residual functioning capacity." Generally, "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" it carries. 20 C.F.R. § 404.1527(d)(3) (2006). Likewise, " '[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " *Mastro*, 270 F.3d at 178 (*quoting Craig*, 76 F.3d at 590).

In this case, Dr. Attarian's November 4, 2003 report was simply a checklist that did not list any clinical evidence to support its conclusions. Moreover, the report was inconsistent with other evidence. Dr. Attarian again examined Luck on November 13, 2003. According to his notes from that visit, Luck was "able to stand and walk without much difficulty and in fact [had] a near normal gait. Both hips seem[ed] to have full motion without much discomfort." Moreover, that report noted that x-rays of the hips and pelvis showed that "his uncemented left total hip [was] well aligned and rigidly fixed." Dr. Attarian also met with Luck on July 24, 2003, when he observed that Luck could walk without a cane or walker and that his wound from surgery was "completely healed" and not tender. Dr. Attarian also noticed that Luck's left hip motion was relatively full and pain free. Next, Valerie White, FNP ("White"), examined Luck on October 6, 2004. Although Luck complained of lower back pains, White noted that he had a

4

full range of motion.  Additionally, a variety of tests including a physical examination, a nerve conduction study, and an electromyography conducted on Luck produced normal results. Moreover, the Disability Determination Services physicians who examined Luck's medical records concluded that he could still perform light work.  Therefore, substantial evidence supports the ALJ's decision to discount the value of Dr. Attarian's November 4, 2003 report because it did not provide any basis for its conclusions and was inconsistent with much of the rest of the record before the ALJ.

Luck also claims that the Magistrate Judge incorrectly found that the ALJ properly rejected Dr. Attarian's conclusion that Luck could only perform sedentary work.  Had the ALJ found that Luck was limited to sedentary work, then in light of his age, education, and work experience, he would have qualified as disabled under 20 C.F.R., Part 404, Subpart P, Appendix 2, 201.14.  Therefore, Luck asserts, the ALJ improperly found that he could return to work at step five.  However, as discussed above, the ALJ properly leant Dr. Attarian's report reduced weight and his determination that Luck was not limited to sedentary work is supported by the substantial evidence that conflicts with Dr. Attarian's November 4, 2003 report.

Next, Luck asserts that the Magistrate Judge incorrectly decided that the ALJ's findings were consistent with the assessment of Luck's treating neurologist, Dr. Kofi A. Doonquah ("Dr. Doonquah"), in determining Luck's residual functioning capacity.  However, the record shows that the ALJ and Dr. Doonquah actually agreed on that matter.  Dr. Doonquah concluded that Luck's condition "could reasonably cause significant pain and limitation upon prolonged standing and walking, and could reasonably require him to sit frequently throughout the day in order to help control his symptoms."  Likewise, the ALJ found that Luck could preform light

5

work on the condition that he retained "the option to sit or stand at 30 minute intervals." Therefore, both the ALJ and Dr. Doonquah essentially reached the same conclusion about Luck's residual functioning capacity: he could perform light work, if he avoided prolonged standing or walking.

Last, Luck maintains that the Magistrate Judge erroneously found that the ALJ properly determined that Luck's allegations were "not fully credible for reasons set forth in the body of this decision." An ALJ may discredit a claimant's testimony but must give specific reasons supported by the record to do so. *Fisher v. Barnhart*, 178 Fed. Appx. 359, 363 (4th Cir. 2006) (*citing* Soc. Sec. R. 96-7p; *Craig*, 76 F.3d at 591-96). In this case, the ALJ relied on a September 24, 2004 report, prepared by Dr. Anne Marie Fras ("Dr. Fras"). In that report, Dr. Fras found that the results of several tests she performed on Luck were within normal limits, contrary to his complaints of pain and limited physical ability. Thus, the results of Dr. Fras's examination provide a specific reason for why the ALJ discounted Luck's testimony on those matters.

## IV.  CONCLUSION

For the reasons stated herein, I will **adopt** the Magistrate Judge's *Report and Recommendation* and will **overrule** Luck's *Objections.* The Commissioner's final decision denying the Plaintiff's claim for benefits will therefore be **affirmed,** and judgment will be **granted** for the Defendant. This case will be **dismissed** from the docket of this Court.

6

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 16th day of November, 2006.

                     s/Jackson L. Kiser
                     Senior United States District Judge